UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

STEPHEN F.,[1]

      **Plaintiff,**

v.

      Case No. 1:23-cv-23199
      Magistrate Judge Norah McCann King

**FRANK BISIGNANO,**[2]
**Commissioner of Social Security,**

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Stephen F. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

I.      **PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income on March 15, 2022, and February 3, 2022, respectively, alleging that he has been disabled since January 6, 2022. R. 88–89, 108–09, 234–70. The applications were denied initially and upon reconsideration. R. 118–27, 134–49. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 150–52. ALJ Matthew Levin held a hearing on August 10, 2023, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 33–56. In a decision dated August 22, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 6, 2022, Plaintiff's alleged disability onset date, through the date of that decision. R. 10–19. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 24, 2023. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On January 17, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[3] On March 28, 2024, the case was reassigned to the undersigned. ECF No. 14. The matter is ripe for disposition.

II.     **LEGAL STANDARD**

   A.    **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 50 years old on January 66, 2022, his alleged disability onset date. R. 18. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 13.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: arthritis of the left shoulder with an ongoing impingement; status-post three surgeries; degenerative changes of the lumbar spine; asthma; obstructive sleep apnea; chronic obstructive pulmonary disease; and coronary artery disease. R. 13–14. The ALJ also found that Plaintiff's obesity was not severe. R. 14.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 14–15.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 15–18. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a insulation worker and a machine operator. R. 18.

At step five, the ALJ found that a significant number of jobs—*e.g.*, jobs as an order filler, an office clerk, and a sorter—existed in the national economy and could be performed by Plaintiff with this RFC. R. 18–19. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 6, 2022, his alleged disability onset date, through the date of the decision. R. 19.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Opening Brief*, ECF No. 13; *Plaintiff's Reply Brief*, ECF No. 16. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 15.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.   Jeffrey Murray, D.O.

On May 2, 2023, Jeffrey Murray, D.O., a treating physician, conducted an examination of Plaintiff. R. 1195–96 (Exhibit C8F/85–86) ("Dr. Murray's May 2023 examination"). Plaintiff had presented for examination of his left shoulder and neck and had reported that he was "doing a little better with home exercise program[.]". R. 1195. Upon examination, Dr. Murray noted that Plaintiff "[s]till some mild loss of neck range of motion. Negative Spurling's today. Good shoulder range of motion and strength. Some pain down the anterior aspect of the arm into the forearm." *Id*. Dr. Murray assessed osteoarthritis of the spine with radiculopathy, cervical region. *Id*. According to Dr. Murray, Plaintiff "has been doing home stretches and exercises for his neck for about 6 weeks. They do give him some temporary relief, but not long-term. At this point,

recommend an MRI to further evaluate the neck for possible injections." *Id*.

    **B.**    **Joseph Ordille, D.O.**

On July 12, 2023, Joseph Ordille, D.O., who had been Plaintiff's primary care physician for the prior two years, completed a two-page, check-the-box, and fill-in-the-blank "Medical Source Statement of Ability to Do Work-Related Activities." R. 1783–84 (Exhibit C25F) ("July 2023 opinion").[4] According to Dr. Ordille, Plaintiff's condition was guarded. R. 1783. In an eight-hour workday with normal breaks, Dr. Ordille opined, Plaintiff could sit for a total of up to 2 hours and could stand/walk for a total of 1 hour. *Id*. Plaintiff must alternate between sitting and standing every 30 to 45 minutes to relieve pain or discomfort. *Id*. Plaintiff could rarely (meaning approximately 1% to 5% of an eight-hour workday, cumulatively and not continuously) lift and/or carry 10 pounds and could rarely reach in all directions (including overhead), handle, finger, or feel; he could never push/pull with his upper and lower extremities. *Id*. Plaintiff's experience of pain or other symptoms was severe enough to constantly interfere with the attention and concentration needed to perform even simple work tasks. R. 1784. Plaintiff must avoid the following: temperature extremes, dust, humidity/wetness, hazards (machinery, heights, etc.), fumes, and "standing or sitting too long[.]" *Id*. He must take five or six unscheduled breaks, each lasting 20 minutes, three to five reclining breaks, each lasting 30 minutes, and six or seven restroom breaks, each lasting 5 minutes. *Id*. Plaintiff was likely to be absent from work four days or more per month due to his impairments and/or treatment. *Id*. Asked to describe Plaintiff's response to treatment (such as medication side effects) that may implicate work activity, Dr.

---

[4] Dr. Ordille also completed a second medical source statement on May 11, 2022. R. 1720–21 (Exhibit C20F/1–2) ("May 2022 opinion"). The Court does not detail the May 2022 opinion because, in the view of this Court, it is the July 2023 opinion that serves as a basis for remand in this case.

9

Ordille responded, "[M]edications makes [sic] him sleepy after taking it[;] he sleeps 2-3 hours after taking it[.]" *Id*. Asked to specify the objective findings, clinical observations, and symptomology supporting his assessment, Dr. Ordille responded: "Mr. F[.] take[s] 11 pills and two inhalers and C-PAPs[;] *his left leg gives out from time to time*[;] he can't stand or sit for long[;] he suffer[s] from sleep apnea where he's constantly falling asleep[;] and he's constantly in pain with his back[.]" *Id*. (emphasis added).

## V.    DISCUSSION

Plaintiff challenges the ALJ's consideration of, *inter alia*, Dr. Ordille's July 2023 opinion. *Plaintiff's Brief*, ECF No. 13, pp. 17–22; *Plaintiff's Reply Brief*, ECF No. 16. For the reasons that follow, the Court agrees that substantial evidence does not support the ALJ's consideration of this opinion.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer*, 186 F.3d at 433; *Cotter*, 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative

evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[5] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The applicable regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical

---

[5] As previously noted, Plaintiff filed applications for disability insurance benefits and supplemental security income on March 15, 2022, and February 3, 2022, respectively.

11

opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2). The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

At step four of the sequential evaluation process in this case, the ALJ found that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited from more than occasional climbing of stairs and ramps. He cannot climb ladders, ropes and scaffolding. He can occasionally balance, but needs to avoid narrow, slippery and erratic moving surfaces. He cannot crawl. He can occasionally kneel, stoop and crouch. He can occasionally reach overhead with the left upper extremity. He needs to avoid concentrated exposure to temperature extremes (heat and cold). He needs to avoid concentrated exposure to fumes, odors dust, gases, poor ventilation, and hazards such as dangerous machinery and unprotected heights.

R. 15. In making this finding, the ALJ found Dr. Ordille's July 2023 opinion to have only limited persuasive value, reasoning as follows:

> The undersigned also finds the May 2022 and July 2023 opinions of primary care provider Dr. Ordille of only limited persuasive value. This source did not cite to any specific evidence to support the limitations opined. Additionally, his opinions are inconsistent with Dr. Murray's clinical observations in May 2023, at which time he described the claimant as having good strength and range of motion of the left shoulder (Exhibit C-8F/52 [R. 1162], C-25F [R. 1783–84], C-8F/85 [R. 1195]).

R. 17.

Plaintiff challenges this evaluation, arguing that, contrary to the ALJ's assertion, Dr. Ordille did in fact, point to specific evidence to support that physician's opined limitations including, among other things, that Plaintiff's medication makes him sleepy, his left leg gives out from time to time, and he has constant back pain. *Plaintiff's Opening Brief*, ECF No. 13, p. 18 (citing R. 1784). Plaintiff also challenges the ALJ's consideration of the consistency of the July 2023 opinion, contending that the ALJ's two citations to the record do not establish that this doctor's opinion is inconsistent with record evidence. *Id*. at 18–21; *Plaintiff's Reply Brief*, ECF No. 16. According to Plaintiff, the ALJ's first reference cites to merely a preoperative clearance and the ALJ's second reference improperly cherry picks from Dr. Murray's May 2023 examination. *Plaintiff's Opening Brief*, ECF No. 13, pp. 19–21; *Plaintiff's Reply Brief*, ECF No. 16, pp. 3–6. Plaintiff also complains that the only inconsistency with Dr. Murray's findings and opinions noted by the ALJ related only to Plaintiff's shoulder impairment; the ALJ pointed to no other evidence regarding Plaintiff's other severe impairments, including, *inter alia*, degenerative changes of his lumbar spine, asthma, obstructive sleep apnea, chronic obstructive pulmonary disease, and coronary artery disease. *Id*. Plaintiff insists that Dr. Ordille's July 2023 opinion is consistent with the record evidence. *Id*.

For his part, the Commissioner argues that Dr. Ordille's statements about Plaintiff's medications, left leg, sleepiness, and back pain are "not specific evidence" and that Dr. Ordille's treatment notes do not support the doctor's July 2023 opinion. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 15, pp. 18–19. The Commissioner also points to "other evidence" in the record that he contends is inconsistent with Dr. Ordille's statements. *Id*. at 19–20. The Commissioner insists that Plaintiff's citation to other record evidence is simply an invitation to the re-weigh the evidence and that, in any event, this Court must uphold the ALJ's decision because it is supported by substantial evidence, even if contrary evidence would support the opposite result. *Id*. at 20–21.

The Commissioner's arguments are not well taken. As to the supportability factor, the ALJ found that Dr. Ordille "did not [cite] to any specific evidence to support the limitations opined." R. 17. However, as detailed above, Dr. Ordille in fact identified sleepiness as a medication side effect, diagnosed sleep apnea, reported that Plaintiff's left leg gives out from time to time, and noted that Plaintiff has constant back pain. R. 1784. The Court cannot say that Dr. Ordille's response in this regard provides no support for his July 2023 opinion. *Cf. Galgoci v. Comm'r of Soc. Sec*., No. 1:23-CV-01530, 2024 WL 3871751, at *9 (M.D. Pa. Aug. 19, 2024) (finding that the ALJ "has not adequately explained his conclusion regarding [] supportability" where the ALJ did not address the opinion's "explanation for her opinions" where that source, "[i]n response to the directive on the form asking her to 'describe the objective findings, clinical observations, and symptomology supporting [her] assessment,'" noted "lower extremity weakness," among other things). Based on this record, the Court cannot say that the ALJ properly considered the supportability factor when he evaluated and discounted Dr. Ordille's July 2023 opinion. *Cf. Rodney Edward G. v. O'Malley*, 743 F. Supp. 3d 653, 663 (E.D. Pa. 2024)

(remanding "for the ALJ to conduct a proper evaluation of the supportability of" opinion evidence where, *inter alia*, the ALJ "did not discuss or even mention" supporting explanations offered by medical sources to support their opinions); *Hammond v. O'Malley*, 735 F. Supp. 3d 567, 583–84 (E.D. Pa. 2024) (remanding where, *inter alia*, the ALJ's "supportability analysis also fails to make any mention of the reasons given by Dr. Desir for her opinion, despite the fact that under the regulations the ALJ must address the 'supporting explanations presented by a medical source . . . to support his or her medical opinion(s) . . . .'") (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).

   The Court is similarly not persuaded that the ALJ has shown that Dr. Ordille's July 2023 opinion is inconsistent with the record evidence. The ALJ purportedly based this finding on Dr. Murray's clinical observations of Plaintiff's shoulder during the May 2023 examination. R. 17. However, the actual exhibit cited by the ALJ refers to a cardiac evaluation clearing Plaintiff for therapy and orthopedic management of his left shoulder. R. 17 (citing, *inter alia*, Exhibit C-8F/52), 1162 (Exhibit C-8F/52). The ALJ also referred to Dr. Murray's May 2023 findings that Plaintiff had "good strength and range of motion of the left shoulder." R. 17. However, the ALJ has not explained, and it is not clear to the Court, and how these findings, which relate only to Plaintiff's shoulder impairment, undermine Dr. Ordille's opined limitations in, *inter alia*, the need to alternate between sitting and standing every 30 to 45 minutes, limitations in standing/walking, reclining breaks, and other unscheduled breaks. *Id.*; *cf. Thomas v. Kijakazi*, No. 21-CV-3547, 2022 WL 17880922, at *7 (E.D. Pa. Dec. 22, 2022) ("However, the ALJ does not explain how Plaintiff's healthy cardiac condition serves as a basis to discount the limitations assessed by Dr. Tecce in the Lower Extremities Impairments Questionnaire, such as Plaintiff's ability to sit, or stand and walk, for only one and four hours, respectively, in an eight-hour

workday, his need for unscheduled 15-minute breaks every one to two hours, or his likely absence from work two to three times per month."). Moreover, as Plaintiff argues, the ALJ did not acknowledge that Dr. Murray also found, in that same May 2023 examination, that Plaintiff continued to experience "[s]ome pain down the anterior aspect of the arm into the forearm" despite performing home stretches and exercises that provided only temporary—rather than long-term—relief. R. 1195; *see also Segal v. Comm'r of Soc. Sec.*, No. CV 19-8839, 2020 WL 2111229, at *6–7 (D.N.J. May 4, 2020) (remanding where "the Court finds that the ALJ nonetheless erred in his treatment of medical evidence in the record: although the ALJ did not entirely ignore treatment notes from Plaintiff's providers, he selectively cited portions of these notes, rather than addressing the conflicting evidence within these records"). Plaintiff also points to record evidence that reflects, among other things, that he suffered from weakness in his lower left extremity and back pain.[6] R. 1449 (containing progress note dated October 21, 2022, reflecting that Plaintiff had painful abduction, lumber tenderness, 4/5 strength in his right lower extremity, and 2/5 strength in his lower left extremity), 1455 (containing progress note dated December 5, 2022, reflecting same findings), 1461 (containing progress note dated January 20, 2023, reflecting that Plaintiff had painful abduction, lumber tenderness, 4/5 strength in his right lower extremity, 2/5 strength in his lower left extremity, and difficulty moving from sitting to standing), 1465 (containing progress note dated February 16, 2023, reflecting same findings),

---

[6] Plaintiff also argues that the ALJ failed to discuss Plaintiff's use of a four-pronged cane. *Plaintiff's Reply Brief*, ECF No. 16, pp. 3–4 (citations omitted). However, Plaintiff does not assert—nor can the Court find any reference in the record—that the cane was medically necessary. *Id.*; *see also Mundo v. Kijakazi*, No. 1:21-CV-517, 2023 WL 2632810, at *5 (M.D. Pa. Mar. 24, 2023) ("[An] ALJ need not account for use of a hand-held assistive device in an RFC assessment unless that device is medically required."); SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]").

1473 (containing progress note dated March 16, 2023, reflecting same findings), 1479 containing progress note dated April 13, 2023, reflecting same findings), 1485 (containing progress note dated May 11, 2023, reflecting same findings). In short, substantial evidence does not support the ALJ's finding that Dr. Ordille's July 2023 opinion was inconsistent with record evidence.

    This Court therefore concludes that remand of the matter for further consideration is appropriate.[7] Moreover, remand is appropriate even if, upon further examination of the Dr. Ordille's opinion evidence and consideration of the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

---

[7] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Ordille's July 2023 opinion and of the RFC determination, the Court does not consider those assertions. However, although not raised by the parties, the Court also notes that the ALJ's hypothetical posed to the vocational expert is not identical to the RFC ultimately found by the ALJ, because the hypothetical omitted the limitation on kneeling, stooping, and crouching. *Compare* R. 15 *with* R. 51–52. It would be helpful on remand for the ALJ to address this inconsistency.

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  October 10, 2025                               *s/Norah McCann King*
                                                                  NORAH McCANN KING
                                                         UNITED STATES MAGISTRATE JUDGE